# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHELE LYNN GORDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-455-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Michele Lynn Gordon requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the decision of the Commissioner and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born August 25, 1976, and was thirty-five years old at the time of the administrative hearing (Tr. 33, 130). She completed her GED, and has worked as a carhop, cashier, dishwasher, fast food worker, dietary aide, assembler, newspaper deliverer, and food preparer (Tr. 26, 180). The claimant alleges inability to work since January 21, 2009, due to depression, arthritis, and asthma (Tr. 179).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on August 16, 2010. Her applications were denied. ALJ Deborah L. Rose conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 25, 2012 (Tr. 15-28). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, she could lift/carry ten pounds frequently and twenty pounds occasionally, could stand/walk

six hours in an eight-hour workday, and sit up to six hours in an eight-hour workday, but she was limited to occasional contact with respiratory irritants. The ALJ further found that the claimant was able to perform simple repetitive tasks with superficial interaction with co-workers and supervisors and no contact with the public (Tr. 19-20). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform in the regional and national economies, *i. e.*, mail room clerk and assembler (Tr. 27).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly assess her mental impairments at steps four and five; (ii) by failing to properly assess the evidence, including the evidence of a consultative examiner and mental health treatment evaluations; (iii) by failing to perform a proper credibility analysis; and (iv) by failing to properly account for her obesity in her RFC. The Court finds that the ALJ failed to properly evaluate the claimant's mental limitations in assessing her RFC at step four, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of asthma, degenerative joint disease, obesity, depression, and anxiety (Tr. 17). The relevant medical evidence reveals that the claimant lost a child in 2007, and began seeking mental health treatment for depression, relationship problems, and unresolved grief at CREOKS mental health services in January 2009 (Tr. 251, 257). Her initial diagnosis was depression NOS, along with Axis III diagnoses of arthritis, asthma, and allergies (Tr. 255). At the time, she was noted to have a global assessment of functioning (GAF) score

of 50 (Tr. 256). At a reassessment on August 19, 2009, the claimant's diagnoses were major depressive disorder, recurrent episode moderate, and generalized anxiety disorder (Tr. 259). Noting that the claimant's current GAF was 48, Michal Maybello noted that the claimant's history included long-term recurrent depression, that she needed both individual rehabilitation and medication management to alleviate symptoms, and that her prognosis was fair (Tr. 260). Six months later, she was again given the same diagnoses and assessed a GAF of 50 (Tr. 268-269). The assessment noted the claimant had moderate to severe concentration problems daily (Tr. 270). On August 10, notes reflect that the claimant had not been taking her medications at the right times (Tr. 278).

Consultative examiner Beth Jeffries, Ph.D., performed a mental status examination for disability determination on December 4, 2010 (Tr. 293). She took the claimant's history and diagnosed her with major depression, recurrent, moderate to severe (Tr. 295). Noting that the claimant had not rescheduled her appointment with a psychologist, Dr. Jeffries stated that she "strongly recommended" that the claimant reschedule her appointment, and that she could benefit from both medication intervention and individual counseling (Tr. 295). In discussing the symptoms, Dr. Jeffries stated that they were "likely to interfere with her ability to perform, certainly within a social setting and would likely interfere with her ability to perform in an occupational setting" (Tr. 296). She continued, indicating that she believed the claimant would experience difficulty concentrating over the course of a workday, and that while she could understand simple and complex instructions, she had a very low frustration tolerance. Reiterating that conclusion, she stated, "So, although she has a cognitive ability to do so, due to her mood

symptoms or depressive symptoms and very low frustration tolerance, she likely would find it difficult to comprehend, particularly complex instructions. I think she would have even more difficulty in a fast paced [] environment or a stressful [] environment" (Tr. 296). Dr. Jeffries concluded, however, by saying that if the claimant became treatment compliant and her depression improved, her concentration would also improve. She thus recommended that the claimant be reevaluated to determine if the claimant had actually improved (Tr. 296). She opined that the claimant's symptoms would remain consistent without treatment or even worsen (Tr. 296).

A follow-up assessment at CREOKS on January 11, 2011, reiterated the claimant's diagnoses and the assessment of the GAF of 50, and the claimant reported that her medications had been helping but had lost their effect to the point that she lost interest in the world around her and struggled to get out of bed (Tr. 327). Notes regarding her thinking and mental process reflect that she had poor memory two to three times a week, and exercised poor judgment two to three times a month (Tr. 328).

On April 29, 2011, the claimant began treatment at Clinico for her physical impairments. At that visit, notes reflect the claimant's psych meds were prescribed and managed by CREOKS (Tr. 418). On July 5, 2011, the claimant was noted to have poor hygiene and soiled clothing, but was seeing a counselor (Tr. 413). On September 16, 2011, the claimant reported having a bad experience at CREOKS, but expressed concern for her own mental state on December 15, 2011 (Tr. 409, 411). She reported struggling with mood swings and a suspicion she had bipolar disorder on February 14, 2012, but reported improvement on March 20, 2012 (Tr. 404).

An unknown state reviewing physician summarized Dr. Jeffries' exam findings but ignored her prognosis and concluded the claimant had moderate limitations in the areas of restrictions of activities of daily living; maintaining social functioning; and maintaining concentration, persistence, and pace (Tr. 311). He or she then completed a mental RFC assessment, checking boxes to indicate that the claimant was markedly limited in the ability to understand and remember detailed instructions and carry out detailed instructions, but stated that she could perform simple work under routine supervision, adapt to a work setting, relate superficially to coworkers and supervisors for work purposes, but should not have to work closely with the general public (Tr. 297-299). Cynthia Kampshchaefer, Psy.D., reviewed these assessments and affirmed them as written (Tr. 347).

At the administrative hearing, the claimant's representative objected to the unnamed state reviewing physician opinion, and the ALJ agreed that it had not been signed but took it under advisement as to how much weight to afford it (Tr. 38). The claimant testified at the administrative hearing as to her mental impairments that she has trouble dealing with stress to the point where she has heart palpitations as a result (Tr. 45). She stated that her anxiety adds to her depression, and noted that she has "okay" days about twenty days a month, and about five to seven days a month where she does not feel like leaving the house (Tr. 46). She stated that on "okay" days she can watch television, but on bad days she has no interest in that or even being around her own children (Tr. 47). She testified that she left CREOKS because they weren't listening to

her when she told them she needed a different medication (Tr. 49). She testified that medications help sometimes, but they get to the point where they stop working (Tr. 50).

In his written opinion, the ALJ noted the January 2009 GAF score from CREOKS (but none of the rest) and gave "little weight" to it to the extent it indicated serious difficulty with social, occupational or school functioning because there were no "objective signs or findings" and she believed the assessment was based on the claimant's own reports (Tr. 23). As to Dr. Jeffries' opinion, she recited Dr. Jeffries' findings, as well as the statement that the claimant would have a fair to good prognosis and improved concentration with treatment (Tr. 23). The ALJ later noted Dr. Jeffries' assessment that the claimant would find it difficult to comprehend particularly complex instructions and have even more difficulty in a fast-paced environment or stressful environment, but stated that a limitation to simple routine tasks and no public contact would sufficiently account for the claimant's limitations (Tr. 24). The ALJ gave great weight to the opinions of the state reviewing physician because it had been affirmed by Ms. Kampschaefer in a signed statement (Tr. 24). She then concluded by stating that the record indicated the claimant's treatment had been largely successful controlling her symptoms (Tr. 24).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health &*

*Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ cited with approval Dr. Jeffries' statements regarding her prognosis with treatment, but ignored concerns regarding her ability to improve, ability to sustain concentration, and recommendation for evaluation to determine if the claimant had in fact improved or remained consistent with her current levels of assessment. It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of her own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). In addition to evaluating Dr. Jeffries' findings according to the appropriate standards and indicating what weight she was assigning to them, the ALJ should have explained why she found

certain aspects of Dr. Jeffries' findings persuasive but not others. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

The ALJ also engaged in improper picking and choosing among the various GAF scores assigned to the claimant. In her written opinion, the ALJ noted only the first GAF score in the record, and rejected it due to a lack of "objective" findings. She did not, however, analyze or even mention the rest of the claimant's GAF scores in the record – none of which were over a 50. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *see Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003), "[a] GAF score of fifty or less . . . does suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004), *citing Oslin*, 69 Fed. Appx. at 947. Instead of simply rejecting the claimant's GAF scores the ALJ should have determined whether such low GAF scores were due to occupational factors by looking at *all* of the scores and the entire mental health record. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) ("[T]he Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job [but] assuming this is true, the ALJ's decision does not indicate he reached the

conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors."). *See also Simien v. Astrue*, 2007 WL 1847205 at *2 (10th Cir. June 28, 2007) ("The ALJ was tasked with determining the level of [claimant's] functioning within the six domains, yet he made no mention of [claimant's] GAF ratings. We agree . . . that he could not simply ignore this evidence.").

Because the ALJ failed to analyze probative evidence inconsistent with the claimant's RFC determination, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's mental RFC. If on remand there is any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**